**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **IAN HORWITZ, et al.,** | : | **CIVIL ACTION No. 2:20-cv-06369-JD** |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| **PENNSYLVANIA DEPT. OF** | : | **ORDER** |
| **MILITARY AND VETERANS** | : |  |
| **AFFAIRS, et al.,** | : |  |
|  | : |  |
| Defendants. | : |  |

_____:

This Court having considered the Motion for Temporary Restraining Order and Preliminary Injunctive Relief of Defendants Deborah Mullane and Rohan Blackwood (the "Individual Defendants"), and good cause having been found, to wit:

1. There is a likelihood of success on the merits of the Individual Defendants establishing that they acted without malice, without bad faith, and within the scope of their employment such that they should receive a legal defense provided by the Commonwealth of Pennsylvania;

2. The Individual Defendants will suffer irreparable harm without a final determination as to whether the Commonwealth of Pennsylvania owes them a legal defense in this matter;

3. An injunction is in the public interest, will preserve the status quo, and no party will be harmed by the entry of the injunction; and

4. No bond is necessary because no person will suffer pecuniary harm:

**IT IS** this _____ day of _____, 2021, at _____ __.m,

**ORDERED** that this case is STAYED until further Order of this Court; and it is further

**ORDERED** that a hearing shall be held under Fed. R. Civ. P. 65(b)(2) on

_____ to determine whether the stay of this

case shall continue with a briefing schedule and further hearing on the relief requested by the

Individual Defendants, after which date this Order shall expire unless extended by another Order

of this Court.


_____
                                                                                    , J.

_____
                                              :
**IAN HORWITZ, et al.,**                      :     **CIVIL ACTION No.  2:20-cv-06369-GEPK**
                                              :
                        Plaintiffs,           :
                                              :
            v.                                :
                                              :
**PENNSYLVANIA DEPT. OF**                      :
**MILITARY AND VETERANS**                      :
**AFFAIRS, et al.,**                           :
                                              :
                        Defendants.           :
_____:

## MOTION FOR
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION OF
## DEFENDANTS BLACKWOOD AND MULLANE

Defendants Deborah Mullane and Rohan Blackwood, by their undersigned counsel, respectfully petition this Court for an Order granting Temporary Restraints pursuant to Fed.R.Civ.P. 65(b) and Preliminary Injunction pursuant to Fed.R.Civ.P. 65(a), and in support thereof alleges as follows:

1.      As set forth more fully in the attached Memorandum of Law and the exhibits thereto, Defendant SEVC and/or the Commonwealth of Pennsylvania owe a defense to Defendants Blackwood and Mullane.

2.      On March 23, 2021, counsel provided by the Commonwealth of Pennsylvania for Defendants Blackwood and Mullane moved to withdraw, and this Court granted the motion on March 24, 2021.

3.      Unless a Temporary Restraining Order is issued and Preliminary Injunction is granted, Plaintiff will suffer immediate and irreparable harm which cannot be compensated by

damages by reason of Defendants denying a defense owed under regulatory and statutory authority to Defendants Blackwood and Mullane.

4.      Defendants Blackwood and Mullane have no adequate remedy at law.

5.      No other party will suffer any appreciable injury if this Motion is granted because the status quo will be maintained, and the case will be stayed while the issue of the defense of Defendants Blackwood and Mullane is litigated.

6.      The denial of a defense to Defendants Blackwood and Mullane is actionable; the rights of Defendants Blackwood and Mullane are clear; and Defendants Blackwood and Mullane are likely to succeed on the merits of its claim.

**WHEREFORE**, Defendants Blackwood and Mullane respectfully pray that this Honorable Court enter a Temporary Restraining Order, and after a hearing thereon, a Preliminary Injunction in the forms attached hereto.

Respectfully submitted,

Dated: <u>3/29/2021</u>                        By:      <u>*/s/  David P. Heim*</u>
                                                    David P. Heim, Esquire
                                                    John A. O'Connell, Esquire
                                                    **BOCHETTO & LENTZ, P.C.**
                                                    1524 Locust Street
                                                    Philadelphia, PA 19102
                                                    (215) 735-3900

                                                    *Attorneys for Defendants Blackwood*
                                                    *and Mullane*
                                                    *Appearing for the Purpose of the Injunction*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

                                           :

**IAN HORWITZ, et al.,**            :    **CIVIL ACTION No. 2:20-cv-06369-GEPK**

                             :

                Plaintiffs,     :

                             :

         v.                 :

                             :

**PENNSYLVANIA DEPT. OF**    :
**MILITARY AND VETERANS**   :
**AFFAIRS, et al.,**             :

                             :

                Defendants.    :

_____:

### MEMORANDUM IN SUPPORT
### OF APPLICATION FOR
### EMERGENCY RELIEF
### AND PRELIMINARY INJUNCTION

David P. Heim, Esquire
John A. O'Connell, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

*Attorneys for Defendants Blackwood*
*and Mullane*
*Appearing for the Purpose of the Injunction*

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………… 1

FACTUAL BACKGROUND………………………………………… 2

   A. The COVID-19 Pandemic In Long-Term Care Facilities……….. 3

   B. The Individual Defendants Were Originally Determined to Be Acting Properly Under Difficult Conditions……………………………….. 7

   C. Evidence Concerning a Cover-Up and Attempt to Improperly Blame the Individual Defendants ………………………………………………. 9

   D. The Commonwealth's Initial Acceptance and Later Refusal to Perform its Statutory Duty and Defend the Individual Defendants in this Litigation ………………………………………………………… 10

   E. The Individual Defendants Appeal of the Commonwealth's Decision

   F. The Commonwealth Attorneys Attempt to Deprive the Individual Defendants of their Rights Via the Pending Motion to Withdraw… 11

LEGAL ARGUMENT ……………………………………………… 11

   A. An Injunction for a Stay and a Hearing on Coverage Is Fully Justified and Equitable…………………………………………………………… 12

      1. The Individual Defendants Will Succeed on the Merits of Their Demand for Coverage ……………………………………… 12

      2. The Individual Defendants Will Suffer Irreparable Harm Absent Relief…………………………………………………………… 13

      3. No Party Will Suffer Greater Harm If An Injunction Issues… 14

      4. An Injunction Serves the Public Interest …………………….. 15

      5. A Nominal Bond Would be Appropriate for the Requested Injunction……………………………………………… 15

   B. A Hearing With Subpoenaed Witnesses Is Necessary to Address the Coverage Issue………………………………………………………….. 16

   C. Proceeding By Notice of Motion Would Expose the Individual Defendants to Additional Harm ……………………………………………. 16

CONCLUSION …………………………………………………. 16

# TABLE OF AUTHORITIES

*Balshy v. Pennsylvania State Police*,

    988 A.2d 813, 836 (Pa. Commw. Ct. 2010)………… ……………  13

*Empire Sanitary Landfill, Inc. v. Department of Environmental Resources,*

    684 A.2d 1047, 1054 (Pa. 1996) …………………………………  15

*Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996)

    2020 WL 2313808, at *8 (Pa. Commw. Ct. May 11, 2020) ……. …  14

*Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)………… …  12

*Minard Run Oil Co. v. United States Forest Serv.,* 670 F.3d 236,

    249-50 (3d Cir. 2011), as amended (Mar. 7, 2012). ………………  12

*XL Specialty Ins. Co. v. Level Glob. Invs., L.P.,*

    874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012) ………………………..  13

*Zambelli Fireworks Mfg. Co. v. Wood*,

    592 F.3d 412, 426 (3d Cir. 2010) …………………………………..  15

# RULES/STATUTES

Fed. R. Civ. P. 65 …………………………………………….. ……  1, 15

71 P.S. § 249(f) …………………………………………………….  12

4 Pa. Code § 39.3……………………………………………….. ……  12, 15

4 Pa. Code § 39.13………………………………………………….  12

Now come Defendants Rohan Blackwood and Deborah Mullane (collectively the "Individual Defendants"), by and through their attorneys Bochetto & Lentz, P.C.,[1] and submit this memorandum in support of their application for emergency relief and a preliminary injunction under Fed. R. Civ. P. 65:

## INTRODUCTION

This Court now faces a difficult issue: what legal defense the Individual Defendants are entitled to. Under a Commonwealth of Pennsylvania regulation, officials and employees may depend upon the Commonwealth for a legal defense and indemnification; however, the withdrawal of counsel for the Individual Defendants effectively wipes out this regulatory insurance for the Individual Defendants, and is causing them irreparable harm.

Counsel for SEVC stole a march on this issue by filing the motion to withdraw while the Individual Defendants' appeal of the shocking determination that their actions at SEVC, performed in the scope of their employment and under extremely trying circumstances, were somehow in "bad faith" or in "malice." By submitting the motion to withdraw, SEVC (and its counsel) placed this dispute within the jurisdiction of this Court—effectively causing this Court to leapfrog the ongoing state administrative procedures set into motion weeks ago—and imposed imminent, irreparable harm on the Individual Defendants.

The Individual Defendants understood that they would be represented by the Counsel for SEVC in this matter and be provided a defense. Jan. 13, 2021 Letters of the OGC, attached hereto as Exhibit A. The deadline to answer the Complaint, April 5, 2021, was agreed to by Counsel for SEVC while representing the Individual Defendants. Now, through the sudden

---

[1] As the Individual Defendants' answers are not yet due, filing counsel is presently appearing only for the purpose of seeking an injunction staying this matter pending the decision on coverage. The Individual Defendants respectfully submit that whether the Commonwealth will honor its obligation to defend the Individual Defendants, requires recognition that counsel here are filing this motion for the purpose of obtaining a legal defense from the Commonwealth, and that the principles of a special appearance should apply.

motion to withdraw, the disputed issue of whether the Individual Defendants will have the benefit of a Commonwealth-provided defense has been prematurely and improperly subject to a *de facto* result that greatly harms the Individual Defendants.

This case is immensely complex. It concerns health care protocols in the still-unfolding COVID-19 pandemic, and decisions made based on constantly-shifting guidance where resources provided to SEVC were patently insufficient. No doubt experts will have to be retained and deposed; voluminous discovery will be exchanged; and numerous depositions will occur, all while the facts allegedly giving rise to the Plaintiffs' claims continue to unfold in a world where the pandemic has not been brought to heel. To throw the Individual Defendants into this matter, without the benefit of the Commonwealth-provided defense they relied on, and without the benefit of procedural protections, denies both the protections inherent in the right to counsel and the procedural due process the Individual Defendants had the right to expect.

Because the issue of whether the Individual Defendants are provided a defense is so important, and so weighty, this Court should:

- Stay this case until the issue of the defense coverage of the Individual Defendants is resolved; and

- Order a hearing and briefing schedule to decide the issue of whether the Individual Defendants are entitled to a defense provided by the Commonwealth;

- Or, in the alternative, stay this case pending the state administrative proceedings.

## FACTUAL BACKGROUND

The Individual Defendants in this matter were the Commandant (Blackwood) and Director of Nursing (Mullane) at Pennsylvania's Southeastern Veterans' Center ("SEVC"), a care facility operated by the Commonwealth of Pennsylvania through the Department of Military

and Veterans Affairs ("DMVA").  The Individual Defendants are both highly qualified, experienced nursing home administrators who have served SEVC and their residents for several years with distinction, each uniformly receiving high praises for their work at SEVC; their records are replete with positive written performance reviews.[2]

A.    **The COVID-19 Pandemic In Long-Term Care Facilities**

    Unfortunately, the Individual Defendants' service at SEVC coincided with the COVID-19 pandemic in 2020.  In the face of an unanticipated, once-in-a-century pandemic, complicated by inconsistent guidance from state and federal authorities, nursing homes were particularly hard-hit by COVID-19.  By November 2020, of 260,000 deaths in the United States from COVID-19, more than 100,000 (40%) occurred in long-term care facilities.[3] Every state had issues in its long-term care facilities, especially early in the pandemic: for example, 86% of deaths in Minnesota from COVID-19 were in long-term care facilities early in the pandemic.[4]

    The late efforts of states to assist care facilities and provide necessary guidance speaks for itself as a contributing factor in harm from the pandemic.  Pennsylvania, for instance, did not set up its Regional Response Health Collaborative to support long-term care facilities until late

---

[2]  Nurse Mullane has over 25 years nursing home experience and served as SEVC's Director of Nursing for the past five years. She has repeatedly received favorable performance reviews, noting she "has exceptional work habits and places a premium on customer service," and she is "clinically strong and ensures quality care for SEVC veterans and spouses."  Likewise, Mr. Blackwood has served as Commandant at SEVC for five years.  DMVA reviews describe Commandant Blackwood as "far exceeding expectations" and "demonstrating great regulator compliance through Inspection and Survey Results."

[3] Jon Kamp and Anna Wilde Mathews, "Covid-19 Deaths Top 100,000 in U.S. Long-Term Care  Facilities," *Wall Street Journal* (Nov. 25, 2020), *available at*  https://www.wsj.com/articles/covid-19-deaths-top-100-000-in-u-s-long-term-care-facilities-  11606333186 (hereinafter "Kamp and Mathews, 'Covid-19 Deaths Top 100,000'").

[4] FOX 9 Staff, "'Time to dig deep': Concern for long-term care facilities amid increased  community spread," FOX 9 KMSP, *available at* https://www.fox9.com/news/time-to-dig-deep-  concern-for-long-term-care-facilities-amid-increased-community-spread.

July 2020, well ***after*** COVID-19 tore through its nursing homes.[5]  The Governor of Kentucky placed the deaths in long-term care facilities squarely on the community as a whole, recognizing the role of community spread in placing nursing home residents in danger: "Because we, Kentuckians, have failed to stop community spread thus far, we can't keep it out of places like this[.]"[6]

Pennsylvania Secretary of Health Dr. Rachel Levine agreed with this, stating, "The introduction of COVID-19 into a long-term care facility is a reflection of the number of cases in the community, which is why all Pennsylvanians have a role in helping protect these facilities." The late recognition of the need for assistance, combined with the admission by state officials that community spread is the culprit behind long-term care facility deaths, is of serious concern when blame for the spread of the virus is attempted to be placed at the door of individuals such as the Individual Defendants.

The particular problems in veterans' homes, in fact, were long ignored by the Commonwealth of Pennsylvania.  Among the nursing home populations that suffered the most, those in state-run facilities for servicemen and women stand out.[7]  Some facilities, such as the Menlo Park Veterans Memorial Home in New Jersey, lost 101 people to the virus, amounting to approximately one-third of the residents. *Id.*; Kamp and Mathews, "Covid-19 Deaths Top 100,000." Similar death rates have occurred in veterans' care facilities around the country: at the

---

[5] 69 News, "Pa. health, medical officials discuss more support for program that helps long-term   care facilities," WFMZ-TV (Nov. 16, 2020), *available at*  https://www.wfmz.com/news/area/pennsylvania/pa-health-medical-officials-discuss-more-    support-for-program-that-helps-long-term-care-facilities/article_219b29de-2849-11eb-b206-8ffec700abc5.html.

[6] Meredith Deliso, "Kentucky veterans center hit hard by coronavirus surge in state," ABC News  (Nov. 13, 2020), *available at* https://abcnews.go.com/Health/kentucky-veterans-center-hit-hard-   coronavirus-surge-state/story?id=74132192.

[7] Elizabeth Koh, "Among Nursing Homes Hit by Covid-19, Veterans Homes Struggled the  Most," *Wall Street Journal* (Dec. 15, 2020), at A1 (hereinafter "Koh, 'Veterans Homes   Struggled'").

Bill Nichols State Veterans Home in Alabama, almost two-thirds of the residents tested positive for COVID-19, and almost one-third—46 elderly veterans—died due to COVID-19. Koh, "Veterans Homes Struggled." A New York veterans home had 72 residents die to the virus; Massachusetts' Holyoke Soldiers' Home suffered 76 COVID-19 deaths, or about one-third of its population. *Id.*

SEVC, on the other hand, kept its infections down and, while any death from the virus is regrettable, only lost 42 residents in a facility with 292 beds, or less than 15%.

Nursing homes even continue to report limited supplies of such pandemic care essentials as N95 masks. Kamp and Mathews, "Covid-19 Deaths Top 100,000." An organization representing nonprofit aging care providers asserted that it has been beating the drum for such basic needs as testing, staffing support, and PPE. *Id.* In Pennsylvania, long-term care providers have dozens of facility employees testing positive at once, and some workers are operating on waivers to serve in positions requiring greater training.[8]

Veterans' homes, however, have been found to be particularly vulnerable to COVID-19. Koh, "Veterans Homes Struggled." In addition to chronic staffing shortages, lack of testing and PPE at the outset of the pandemic created risk in veterans homes generally. *Id.* Given a population that is disproportionately male (more than half) and elderly, and the fact that COVID-19 is deadlier to men and the aged, veterans' homes faced a grim situation in a pandemic more deadly to its residents than those in other long-care facilities, which generally care for populations only one-third male. *Id.* The lack of consistent regulatory oversight has become apparent during the pandemic, also, as the Department of Veterans Affairs disclaimed any responsibility to oversee state-run homes prior to COVID-19. *Id.*

---

[8] Andrew Forgotch, "Long term care facilities face staffing issues, ask for more help," ABC27 (Nov. 20, 2020), *available at* https://www.abc27.com/news/long-term-care-facilities-face-staffing-issues-ask-for-more-help/.

What is more, as explained by Dr. Darrell Jackson (the DMVA Medical Director) during the Pennsylvania Democratic Senate Policy Hearing on May 6, 2020, the lack of availability of COVID-19 testing and the lag time for test results was a substantial contributing factor in the disease's spread in the DMVA homes, including SEVC.[9] As Dr. Jackson explained, DMVA had no control over which residents or staff could be tested – the DOH made such determinations as to who could be tested:

> "As everyone knows, when you lockdown a nursing home, you cannot prevent the staff from coming in. You can screen the staff the best you can but there is no guarantee that they are not asymptomatic carriers and we know that's what has been happening at SEVC and any of the veterans' homes that actually have infections right now. The problems are those carriers can move around the home in the various units and infect other staff, infect other residents and then you look up a week, two weeks later and the infection is out of control.
>
> We started the interventions of doing the screening from the very beginning of March. We were taking temperatures in the beginning of March. We tried to do the best we could to get this under control as quickly as possible. ***The biggest problem was we did not have control over the testing, whether it was testing for the residents or the testing for the staff. That was being controlled by the Department of Health and they basically told us who we were allowed to test. Because we wanted to test more people to be able to figure out how we could move the residents to a clean unit instead of having residents on a unit where they may get exposed.*** We've done the best we could possibly do and we are still going forward to make sure we are providing the best care to the veterans and family members that are in our care."[10]

In the end, in a situation where even respected federal officials change their guidance on whether such basic measures as masks are advisable, the availability of testing was extremely limited and restricted by the DOH, and COVID-19 presented a learn-as-you-go response

---

[9] https://www.pasenate.com/the-impact-of-covid-19-on-nursing-and-veterans-homes/: Zoom hearing video of Pennsylvania Democratic Senate Policy Hearing, May 6, 2020.
[10] *Id.* (Dr. Jackson Testimony at 1:21:30-1:23:38).

scenario where daily updates from Dr. Levine were necessary, it is irresponsible to scapegoat a pair of individuals in a facility that managed to contain an early outbreak and avoid the dramatic loss of life that occurred in other veterans' homes.[11]

**B.**    **The Individual Defendants Were Originally Determined to Be Acting Properly Under Difficult Conditions**

As the pandemic unrolled over the nation in 2020, Mr. Blackwood was in constant contact with DMVA headquarters ("HQ") concerning pandemic response protocols. During these conference calls, Mr. Blackwood made repeated pleas to DMVA HQ for additional staffing resources and testing. It was explained to HQ that it was proving to be impossible to fully implement all recommended guidance and protocols with just the current nursing and CNA staff available at SEVC, and that the lack of testing exacerbated the staff shortages that impacted SEVC. These pleas were made starting in Mid-March, but the National Guard was not deployed to SEVC until April 15, 2020, and enhanced testing was not made available by DOH until late April. This is corroborated by testimony before the Pennsylvania Senate:

> "We originally made recommendations to the SEVC that they should have dedicated staff to each of the Units. And what that means is that if you have an activities person going in there, if you have an aide, if you have a nurse, they should be dedicated to that one Unit. They could not guarantee that could happen because as you know ***they had a significant nursing shortage and that's why we brought in the National Guard because we were having such a significant nursing shortage we were concerned about being able to provide the appropriate and best care to the veterans in our care***. If we were able to test more of the staff to get this under control, yes if we were able to test the staff ourselves it would have been easier for us to dedicate each staff to those Covid Units to say those who were not infected you'll be on the clean Unit. It probably would have made it easier to control that process. But we didn't control the testing upfront. That testing was controlled by the Department of Health and it wasn't until a

---

[11] Holly Yan, "Top health officials have changed their minds about face mask guidance -- but for good reason," CNN Health (July 20, 2020), *available at* https://www.cnn.com/2020/07/19/health/face-masks-us-guidance/index.html.

couple of weeks ago that we were allowed to go outside of the Department of Health to get that testing done."[12]

Furthermore, as SEVC dealt with COVID-19, there were official findings that SEVC was addressing issues properly, supporting the actions of the Individual Defendants. Notably, on May 6, 2020, the Pennsylvania DOH ("DOH") issued a letter concerning a survey of SEVC concluded on May 1, 2020, which states in no uncertain terms, ***"As a result of this survey, no evidence of deficient practice was identified."*** See May 6, 2020, DOH Letter, attached hereto as Exhibit B. A second DOH survey was conducted for five hours on May 9, 2020, resulting in a finding that ***"[t]he overall complaint survey was unsubstantiated,"*** clearing SEVC of any allegation of deficient practices. *See* May 9, 2020, Ruscavage email, attached hereto as Exhibit C.

The DOH findings concerning SEVC (that are attached to the Complaint) were not only inconsistent with all prior DOH findings (as set forth above), but the DOH findings were hotly disputed in a "dispute resolution" report by DMVA officials. This DMVA dispute resolution report was been suppressed by the Commonwealth. Further, there are many verbal assertions made regarding SEVC performance regarding the May 2020 time period that are inconsistent with the later DOH findings.

Maj. Gen. Eric Weller – the Deputy Adjutant General of the DMVA, in a memo for the record dated August 7, 2020, detailed a series of statements concerning SEVC's compliance with infectious control procedures. *See* Weller Memo of Aug. 7, 2020, attached hereto as Exhibit D. Maj. Gen. Weller notes that DOH gave Mr. Blackwood an "unsubstantiated" finding concerning alleged deficiencies on May 9, 2020; on May 15, DOH stated that SEVC was "compliant with Infectious Control Procedures;" on May 22, then Secretary Levine stated that the SEVC

---

[12] https://www.pasenate.com/the-impact-of-covid-19-on-nursing-and-veterans-homes/: Zoom hearing video of Pennsylvania Democratic Senate Policy Hearing, May 6, 2020, Dr. Jackson Testimony starting at 1:50:54.

inspection was "alright" and reiterated that statement on May 22, just days before the Individual Defendants were suspended. *Id.*

The DOH survey attached as Exhibit 1 to the Complaint was conducted June 1 through June 9, 2020, *after* the Individual Defendants were suspended and immediately following the repeated assertions of the DOH that all was compliant at SEVC. After the DOH issued its last survey, the DMVA filed an Informal Dispute Resolution concerning the DOH survey, alleging that the DOH survey from June was incorrect and flawed. *See* July 9, 2020 IDR, attached hereto as Exhibit E. The DMVA response is lengthy, detailed, and includes direct refutations of the serious false allegations in the June DOH survey. *Id.*

**C.    Evidence Concerning a Cover-Up and Attempt to Improperly Blame the Individual Defendants**

At the same time that the DOH was issuing inspection results to SEVC indicating no deficiency in practices, other actors were attempting to scapegoat and blame Mr. Blackwood and Nurse Mullane for the Covid deaths at the SEVC. Politicians contacted Maj. Gen. Weller directly and indicated that they possessed documents and recordings that constituted at least breach of HIPAA confidentiality and possibly violation of the wiretap statute. *See* Weller Notes, April 22 to May 23, 2020, attached hereto as Exhibit F. Maj. Gen. Weller describes calls with Pennsylvania Senator Muth in which the Senator made allegations about SEVC that General Weller rebutted, and also alleged that she possessed resident medical records and "secret recordings of the SEVC Commandant" (i.e., Mr. Blackwood). *Id.* A subsequent email from Sen. Muth on May 17 questioned the results of the May 9, 2020, DOH inspection, and sought information on how to file a new complaint—at the same time that Secretary Levine was assuring SEVC that the May 9, 2020, inspection was "alright." *See* May 17, 2020, Muth email, attached hereto as Exhibit G.

The situation was such that Maj. Gen. Weller prepared extensive on-boarding notes for the next Adjutant General, dealing extensively with the way the pandemic had played out in SEVC and investigation of SEVC. *See* On-Boarding Notes, attached hereto as Exhibit H. General Weller states that SEVC was used as a negotiating chip in a bureaucratic struggle with the Office of General Counsel ("OGC"), and in particular the official at the OGC involved in investigating SEVC. *Id.* at 2 ("I've since come to learn that Pettis wanted to use the SEVC investigation to justify her Org Structure proposal.").

The On-Boarding Notes are extremely revealing of the internal support of the Individual Defendants' actions to Covid pandemic. They note that Mr. Blackwood took a provisionally licensed facility and turned it into a "5 Star Facility" and performed well in his role. *Id.* at 4. A substantial portion of the notes then describe, in detail, how SEVC (under the management of the Individual Defendants) operated properly pursuant to existing guidance. *Id.* at 4-6, 9-24 (addressing issues exhaustively). The political nature of the relationship between the Governor's office, the DMVA, and Senator Muth then receive detailed treatment in Maj. General's Notes. *Id.* at 6-9.

**D.**     **The Commonwealth's Initial Acceptance and Later Refusal to Perform its Statutory Duty and Defend the Individual Defendants in this Litigation**

The Individual Defendants were initially notified that they would receive a defense in this matter, provided by the Commonwealth, as well as indemnification, on January 13, 2021. OGC Letters of Jan. 13, 2021 (improperly dated Jan. 13, 2020), attached hereto as Exhibit I. These letters assured the Individual Defendants that they would be represented at that time. *Id.*

On February 24, 2021, the OCG notified the Defendants that it would not defend or indemnify them. Ex. A. The OCG's vague reason was that "your actions were determined to be a bad faith exercise of your authority, outside of the scope of your employment, and potentially

with malice." *Id.*

**E.     The Individual Defendants Appeal of the Commonwealth's Decision**

The position of the OCG concerning coverage was not only inconsistent with the facts as known to the Individual Defendants, the DMVA, Maj. Gen. Weller, and the DOH while the Individual Defendants were at SEVC, but also with the position of the OCG itself with respect to the investigation of Mr. Blackwood concerning allegations of unprofessional conduct.  *See* OGC Letter of Aug. 19, 2020, attached hereto as Exhibit J.  As the Individual Defendants were clearly operating within the scope of their employment and not in bad faith—and certainly not with malice—they appealed the denial of coverage from the OGC.  *See* Appeal Letter of Mar. 5, 2021, attached hereto as Exhibit K.

**F.     The Commonwealth Attorneys Attempt to Deprive the Individual Defendants of their Rights Via the Motion to Withdraw**

While the appeal of coverage for the Individual Defendants was pending—and after negotiating and stipulating to a date to answer the Complaint of April 5, 2021—Counsel for SEVC filed a motion to withdraw its appearance for the Individual Defendants on March 23, 2021, only thirteen days before an answer was due.  *See* Motion to Withdraw, attached hereto as Exhibit L.  The motion by Counsel for SEVC placed at issue the OGC's decision not to defend the Individual Defendants in its motion.  *Id.* ¶ 8.

This Court entered an Order granting the motion (prior to any opposition having been filed) on March 24, 2021.

**LEGAL ARGUMENT**

In order to obtain preliminary injunctive relief, the Individual Defendants must demonstrate: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to

the nonmoving party; and (4) that the public interest favors such relief." *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 249-50 (3d Cir. 2011), *as amended* (Mar. 7, 2012) (quoting *Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

## A.    An Injunction for a Stay and a Hearing on Coverage Is Fully Justified and Equitable

The Individual Defendants seek a stay of this matter to allow them to resolve the coverage issue and assure themselves of legal representation during this matter.  As the Individual Defendants will easily meet all of the elements of injunctive relief, the Court should grant the requested injunction and stay this case pending a hearing, in this Court, on whether the Individual Defendants are entitled to a legal defense provided by the Commonwealth.

### 1.    The Individual Defendants Will Succeed on the Merits of Their Demand for Coverage

It is plain that, given the ample record of support from the DMVA, Maj. Gen. Weller, and the DOH's own findings while the Individual Defendants were at SEVC, they will succeed on their appeal concerning coverage for legal defense and indemnification in this matter.

Pennsylvania provides, by statute, authority for regulations to address "other expenses for which all officers and employes of the executive branch of the State Government may be reimbursed[.]" 71 Pa. Stat. Ann. § 249(f).  Pursuant to that authority, the Commonwealth of Pennsylvania "will undertake the defense" and "will indemnify" an official acting in good faith or within the scope of their authority.  4 Pa. Code § 39.3(a).  Only where bad faith, malice, or actions outside the scope of employment have occurred, may the Commonwealth not undertake a defense and indemnification.  4 Pa. Code § 39.3(b).  An employee may appeal such a decision within ten days (as the Individual Defendants have).  4 Pa. Code § 39.13(d)(1).

In this context, "malice" has been determined to be "intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the

law will imply an evil intent." *Balshy v. Pennsylvania State Police*, 988 A.2d 813, 836 (Pa. Commw. Ct. 2010). "Bad faith" connotes dishonesty, fraud, or corruption. *Id.* And "scope of employment" is "[t]he range of reasonable and foreseeable activities that an employee engages in while carrying out the employer's business." *Id.* Pennsylvania courts have found that a police officer and a forensic chemist manipulated evidence, concealed exculpatory evidence, and provided false testimony in a criminal case qualified as "bad faith" conduct such that defense and indemnification would not be warranted. *Id.* at 840.

Here, it is plain that a welter of evidence not only undercuts the DOH findings of June 9, 2020, but that the DOH had inspected and approved the Individual Defendants' conduct at SEVC. Exs. B, C, D, H. Based on all of this evidence—which sets forth explicit timelines of actions by the Individual Defendants and rebuts the allegations against them which presumably form the basis of the denial of coverage—the Individual Defendants can hardly have been acting with malice or in bad faith while working in a veterans' home in the difficult situation of the COVID-19 pandemic. Furthermore, nothing the Individual Defendants did can conceivably be construed as outside of the reasonable and foreseeable activities they would engage in as Commandant and Director of Nursing, respectively.

### 2. The Individual Defendants Will Suffer Irreparable Harm Absent Relief

The Individual Defendants will suffer irreparable harm absent relief. "The failure to receive defense costs under a professional liability policy at the time they are incurred 'constitutes "an immediate and direct injury"' sufficient to satisfy the irreparable harm requirement." *XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*, 874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012). Without access to a legal defense provided by the Commonwealth—or at least a final decision on that issue—the Individual Defendants find themselves faced with a civil rights and wrongful death action brought by numerous Plaintiffs, one in federal court where experts—

and expert discovery—will be necessary.  The Individual Defendants will lose important,

valuable rights due to the forced march by SEVC and Counsel for SEVC over their right to

counsel in this matter.

Additionally, the Individual Defendants have filed an appeal of the denial of defense and

indemnity.  The Order of March 24, 2021, forcing the Individual Defendants to answer almost

instantly with counsel not previously entered in this case, effectively denies them their due

process rights with respect to notice and a hearing, as well as effectively denies them a name-

clearing hearing, which the Individual Defendants have also requested and which is pending.

*Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996) ("The principal relief to which an

individual is entitled should the government's stigmatizing comments rise to the level of a due

process violation is a hearing to clear his name.")[13]

### 3.     No Party Will Suffer Greater Harm If An Injunction Issues

This action is recently filed, and this Court could issue a briefing schedule and resolve the

issue of defense and indemnity in a timely fashion, so as to permit the Individual Defendants a

legal defense of the nature demanded by the case.  This is doubly appropriate in the current

circumstances, as this Court has entered the Order that effectuated the withdrawal of counsel for

the Individual Defendants on the request of SEVC, the Commonwealth party in this matter.  This

indicates that the Commonwealth acquiesced to the decision to bring the issue here, rather than

have it decided in administrative proceedings.  Further, given the urgency for the Individual

---

[13] It should be noted that the timing of the Commonwealth's reversal of its coverage decision was *after* the Individual Defendants demanded a name clearing hearing and provided a notice of claim for the denial of same on January 22, 2021.  *See* Ex. M, Jan. 22, 2021 Letter.  On January 13, the Commonwealth preliminarily agreed to provide a defense to Mr. Blackwood and Nurse Mullane in this matter. Ex. A.  The Commonwealth then reversed this preliminary coverage decision only after the Individual Defendants demanded a name clearing hearing and alleged they had been deprived of their due process rights by being terminated before any such due process hearing.  The timing of the Commonwealth's reversal of its coverage position – and the unreasonable nature of it – gives rise to the reasonable conclusion that the reversal on coverage was done in retaliation for the Individual Defendants asserting their Constitutional rights to due process.

Defendants to have counsel represent them in this matter, and the fact that the state administrative proceeding apparently has no way of being expedited,[14] this Court should determine the issue to protect the Individual Defendants' rights.

In the alternative, this Court could stay the matter pending a final resolution of the coverage issue as filed by the Individual Defendants in the state administrative proceeding.

### 4.    An Injunction Serves the Public Interest

There is no question here that an injunction—simply staying this matter and requiring a hearing after briefing the issue of the Individual Defendants' entitlement to a legal defense— serves the public interest.  The Commonwealth of Pennsylvania has announced, in its regulations, the public interest in defending and indemnifying its employees.  4 Pa. Code § 39.3(a).  Allowing this right to be sidestepped by not acting on the Individual Defendants' appeal to the OGC by their counsel withdrawing wipes out an important right.  This Court should recognize that the public interest would be served by a stay and a hearing.

### 5.    A Nominal Bond Would be Appropriate for the Requested Injunction

Although Rule 65(c) requires a movant to provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined," the requested injunction in this matter would not deprive any party of any property, as all that is requested is a stay and a hearing, and thus this matter falls under the narrow exception to Rule 65(c).  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d

---

[14] Once the Motion to Withdraw was filed in this Court, on March 23, 2021, undersigned Counsel specifically demanded that the Office of General Counsel expedite the determination of the coverage issue in the state administrative proceeding because otherwise the Individual Defendants would be without counsel in this matter and there was a risk of default as early as April 5, 2021.  Ex. Ex. N, 3/23/21 E-Mail to OCG.  The Office of General Counsel has ignored that request to expedite the administrative appeal of the coverage dispute.  In this instance, the Individual Defendants should not be required to exhaust administrative remedies, where the administrative agency refuses to expedite consideration of the issue, and that refusal carries the risk of completely mooting the need for the requested remedy.  *See Empire Sanitary Landfill, Inc. v. Department of Environmental* Resources, 684 A.2d 1047, 1054 (Pa. 1996)(exception to administrative exhaustion is "where the legal or equitable remedies are unavailable or inadequate, or the administrative agency is unable to provide the requested relief.")

Cir. 2010) ("Such an extremely narrow exception exists when complying with the preliminary injunction raises no risk of monetary loss to the defendant." (internal quotation omitted)).  If the Court should impose a bond, the Individual Defendants respectfully submit that a bond of $100 be set.

**B.**     **A Hearing With Subpoenaed Witnesses Is Necessary to Address the Coverage Issue**

As this Court can easily see from the nature of the exhibits, resolution of the legal defense coverage in this matter depends in part upon the testimony of Maj. Gen. Weller, whose contemporaneous notes constitute an eloquent rebuttal of allegations of "malice" or "bad faith" by the Individual Defendants.  The Individual Defendants therefore request, in conjunction with a stay, a briefing schedule, and a hearing on the issue of legal defense coverage, that the Court hear witness testimony consistent with COVID-19 protocols, including that of Maj. Gen. Weller, whom the Individual Defendants would seek to subpoena.

**C.**     **Proceeding By Notice of Motion Would Expose the Individual Defendants to Additional Harm**

The Individual Defendants require an expedited order outside of ordinary motion practice because of the inherent delay that will arise from the international nature of this matter.  Counsel for SEVC negotiated the extension of time to answer on behalf of the Individual Defendants, and then, just before that time expired, moved to withdraw from the matter.  The Individual Defendants need to know now whether they will be defended by the Commonwealth, or left to their own means to defend this complex matter, prior to filing pleadings in this matter.

**CONCLUSION**

As heretofore set forth, the Individual Defendants easily meet their burden to obtain an injunction staying this matter and setting a briefing schedule, followed by a hearing, on the issue

of whether they are entitled to a legal defense.

Respectfully submitted,

*/s/ David P. Heim*

Dated: 5⁄14; 1⁄4243                    By: _____
                                       David P. Heim, Esquire
                                       John A. O'Connell, Esquire
                                       **BOCHETTO & LENTZ, P.C.**
                                       1524 Locust Street
                                       Philadelphia, PA 19102
                                       (215) 735-3900

                                       *Attorneys for Defendants Blackwood*
                                       *and Mullane*
                                       *Appearing for the Purpose of the Injunction*

<u>**CERTIFICATE OF SERVICE**</u>

I, David P. Heim, hereby certify a true and correct copy of the enclosed Motion for Temporary Restraining Order and Preliminary Injunction  was served via ECF notification and/or First Class Mail on this 29th day of March, 2021 to the following:

<u>**Via ECF Notification**</u>
Robert  F. Daley, Esquire
Robert Peirce & Associates, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA  1521**9**
bdaley@peircelaw.com


<u>**Via First Class Mail**</u>
Pennsylvania Department of Military and Veterans Affairs
Building S-0-47, Fort Indiantown Gap,
Annville, PA 17003



                              **BOCHETTO & LENTZ, P.C.**

                By:      */s/  David P. Heim*
                      David P. Heim, Esquire